[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12825
Non-Argument Calendar
_____

D.C. Docket No. 8:17-cr-00372-VMC-TGW-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TYRONE DEVLIN,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 16, 2019)

Before MARCUS,  ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

　　　　For his participation in a fraudulent income-tax return scheme, Tyrone Devlin

was sentenced to prison for a total term of 116 months.  He now appeals his sentence,

raising challenges to the calculation of his guideline range and to the constitutionality of judicial fact finding at sentencing.

## I.

Devlin pled guilty to conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (Count 1); theft of government property, in violation of 18 U.S.C. § 641 (Count 2); access-device fraud, in violation of 18 U.S.C. § 1029(a)(3) (Count 3); and aggravated identity theft, in violation of 18 U.S.C. § 1028A (Count 4).

According to the presentence investigation report ("PSR"), Devlin and three coconspirators perpetrated a fraudulent income-tax return scheme.  Using stolen personal identification information, including names, dates of birth, and social security numbers, Devlin and his coconspirators submitted fraudulent tax returns in others' names and without their authorization and then pocketed the resulting refunds.  The refunds were transferred to reloadable debit cards, some of which had been issued in the names of victims.

Applying § 2B1.1 of the 2016 Guidelines Manual, the PSR calculated a total offense level of 23 for Counts 1–3.  Starting with a base offense level of 6, the PSR applied a 16-level increase for an intended loss of $2,567,696, § 2B1.1(b)(1)(I); a 2-level increase for 10 or more victims, § 2B1.1(b)(2)(A)(i); a 2-level increase for "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification," § 2B1.1(b)(11)(C)(i); and a 3-level

reduction for acceptance of responsibility, § 3E1.1.  Combined with a criminal-history category of VI, Devlin's resulting guideline range for Counts 1–3 was 92 to 115 months.  Count 4, the aggravated-identity-theft offense, carried a mandatory consecutive sentence of 24 months.  *See* 18 U.S.C. § 1028A; U.S.S.G. § 2B1.6.

Devlin objected to each of the enhancements and also argued that judicial fact finding at sentencing violated his constitutional rights to have a jury determine the facts essential to his sentence.  At sentencing, the district court, after hearing testimony from Devlin and a detective involved in the investigation of Devlin and his coconspirators, overruled Devlin's objections and sentenced him to concurrent terms of 92 months as to Counts 2 and 3 and 60 months (the statutory maximum) as to Count 1, plus a consecutive term of 24 months as to Count 4, for a total term of 116 months of imprisonment.  Devlin now appeals.

## II.

Ordinarily, we review a district court's interpretation of the Sentencing Guidelines *de novo* and its findings of fact, including its calculation of the loss amount, for clear error.  *United States v. Presendieu*, 880 F.3d 1228, 1245 n.9 (11th Cir. 2018).  Review for clear error is deferential, and we will not disturb a district court's findings unless we are left with a definite and firm conviction that a mistake has been made.  *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016).

Issues raised for the first time on appeal, however, are reviewed for plain error only. *United States v. Carroll*, 886 F.3d 1347, 1351 (11th Cir. 2018). "Plain error review requires a showing that (1) there was an error; (2) it was plain; (3) it affected substantial rights; and (4) it seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.*

A. *Hearsay Evidence*

Devlin first argues that the district court erred in relying on unreliable hearsay statements of a coconspirator regarding Devlin's participation in the conspiracy. Because Devlin did not object to the court's utilization of hearsay testimony at sentencing, we review this contention for plain error only.

A sentencing court may consider any information, including hearsay, regardless of its admissibility at trial, provided that: (1) "the evidence has sufficient indicia of reliability;" (2) "the court makes explicit findings of fact as to credibility;" and (3) "the defendant has an opportunity to rebut the evidence." *United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010) (quotation marks omitted). "To show that the evidence lacks minimal indicia of reliability a defendant must establish (1) that the challenged evidence is materially false, and (2) that it actually served as a basis for the sentence." *United States v. Bourne*, 130 F.3d 1444, 1447 (11th Cir. 1997) (quotation marks omitted). The court's failure to make explicit findings as to reliability, however, "does not necessarily require reversal or remand where the

reliability of the statements is apparent from the record." *United States v. Docampo*, 573 F.3d 1091, 1098 (11th Cir. 2009) (quotation marks omitted).

Here, the district court did not err—plainly or otherwise—by considering hearsay statements from a coconspirator, Marquis Thornton, introduced through the testimony of Detective Sharla Canfield. Even assuming the court in fact relied on the hearsay in sentencing him, Devlin has not shown that the hearsay is false or unreliable. Ample circumstantial evidence corroborated Thornton's statements that Devlin was involved in a broader conspiracy to file fraudulent income-tax returns— that he saw Devlin personally file tax returns and that Devlin paid him to obtain personal identification information—and not just, as Devlin himself testified, a conspiracy to use a fraudulently obtained tax refund on one occasion.

In particular, Canfield testified that Devlin, Thornton, Jason Collins, and one other person were discovered in a hotel room containing 1,900 stolen "identifiers" (names, dates of birth, social security numbers, and debit or credit card numbers), 74 prepaid debit cards, and 3 laptop computers with tax-filing software. The identifiers were on ledgers, notebooks, and loose paper "strewn across the hotel room." Devlin's fingerprints were found on some of these materials. One debit card found in the hotel room had been used by Devlin at an ATM the day before the search to withdraw fraudulent tax-refund money. The IRS had blocked nine other fraudulently obtained refunds from being loaded onto that same card. Another debit

card in Devlin's name had been loaded with other fraudulently-obtained tax refunds. In the months after the search of the hotel room, Devlin was found with additional prepaid debit cards and identifiers during traffic stops.  Collins was with Devlin during one of these traffic stops.

Given this corroborative evidence strongly suggesting that Devlin was actively involved in the scheme to file fraudulent tax returns, Thornton's hearsay statements had sufficient indicia of reliability to be considered.  While the hearsay provided the only direct evidence that Devlin personally filed fraudulent tax returns, the hearsay is entirely consistent with Canfield's testimony, and, in any event, whether Devlin personally filed a return is not essential to his knowing and active participation in the conspiracy.  Furthermore, because the "reliability of the statements is apparent from the record," the court's failure to make specific reliability findings does not warrant reversal.  *See Docampo*, 573 F.3d at 1098.

Additionally, Devlin had the opportunity to rebut the evidence by cross-examining Canfield and by testifying as to his own conduct, which he did.  And the court was entitled to discredit Devlin's testimony disclaiming any knowledge of a broader conspiracy and in fact conclude that the exact opposite was true.  *See United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995) ("[W]hen a defendant chooses to testify, he runs the risk that if disbelieved [the factfinder] might conclude the

opposite of his testimony is true." (quotation marks omitted)).   Accordingly, the district court did not err by considering hearsay evidence at sentencing.

B. *Amount of Loss*

Devlin next contends that the loss amount of $2,567,696 is not supported by the evidence presented at sentencing.   He asserts that he should be held responsible only for the amounts he actually obtained.

Loss is based on a defendant's "relevant conduct," which includes Devlin's own actions and the actions of others that are reasonably foreseeable and in furtherance of the jointly undertaken criminal activity.  U.S.S.G. § 1B1.3(a)(1).  The 2016 Guidelines instruct a district court to apply a 16-level enhancement when an offense involving fraud or deceit results in loss exceeding $1.5 million.  *Id.* § 2B1.1(b)(1)(I).  "[L]oss is the greater of actual or intended loss." *Id.* § 2B1.1, cmt. n.3(A).   Intended loss means "the pecuniary harm that the defendant purposely sought to inflict" and includes harm "that would have been impossible or unlikely to occur." *Id.* § 2B1.1, cmt. n.3(A)(ii).  The court need only make a reasonable estimate of the loss amount, but the loss amount cannot be based on speculation. *Id.* § 2B1.1, cmt. n.3(C); *United States v. Medina,* 485 F.3d 1291, 1304 (11th Cir. 2007). The government bears the burden of proving loss with reliable and specific evidence. *Medina*, 485 F.3d at 1304.

Here, the district court did not err by concluding that Devlin was responsible for the intended loss of over $2 million.  The loss amount of $2,567,696 was based on two sources: (1) the amount of refunds claimed on fraudulent income-tax returns filed during the scope of the conspiracy (May 2012 to August 2012) using the personal identification information found in the hotel room; and (2) fraudulent refunds directed to Devlin's debit card.  Although Devlin claims he was unaware of a "broader conspiracy," the district court reasonably inferred from the evidence described above that Devlin and his coconspirators "worked together to file fraudulent tax returns that, if fully paid out by the IRS, intended to cause total pecuniary harm to the IRS in the amount of $2,567,696."  In other words, the court did not clearly err in finding that the intended losses associated with the returns filed using personal identification information found in the hotel room were reasonably foreseeable and within the scope of jointly undertaken activity.

*C.  Double Counting*

Devlin argues that the guideline applicable to aggravated-identity-theft offenses, U.S.S.G. § 2B1.6, precluded the application of the enhancement under U.S.S.G. § 2B1.1(b)(11)(C)(i).[1]  We agree.

---

[1]  The government's response focuses on U.S.S.G. § 2B1.1(b)(11)(B)(i), but that enhancement wasn't applied.  Also, we disagree with the government that Devlin has abandoned this issue on appeal.  While his briefing is not a model of clarity, he devoted a discrete section of his brief to the issue, he cited relevant authority, including § 2B1.6, cmt. n.2 and *United States v. Taylor*, 818 F.3d 671 (11th Cir. 2016), and he made it clear enough that, as he argued below, the

Section § 2B1.1(b)(11)(C)(i) instructs courts to apply a two-level increase if the offense involved "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification." U.S.S.G. § 2B1.1(b)(11)(C)(i). "However, the text of § 2B1.6 of the Guidelines limits the application of sentencing enhancements to an offense in the context of 18 U.S.C. § 1028A convictions." *United States v. Taylor*, 818 F.3d 671, 674 (11th Cir. 2016).

Under § 1028A, the court is required to impose a consecutive sentence of two years of imprisonment. *See* 18 U.S.C. § 1028A. Application note 2 to § 2B1.6 explains that, to avoid double-counting relevant conduct, this required sentence may limit the applicability of certain enhancements for the underlying offenses. *See* U.S.S.G. § 2B1.6, cmt. n.2. Specifically, courts should not apply enhancements for the "transfer, possession, or use of a means of identification." *Id.*; *see United States v. Charles*, 757 F.3d 1222, 1226–27 (11th Cir. 2014) (section § 2B1.6 bars enhancement for "trafficking" an unauthorized access device under § 2B1.1(b)(11)(B)(i)). Nevertheless, enhancements not based on the "transfer, possession, or use of a means of identification," such as the use of device-making equipment, *United States v. Cruz*, 713 F.3d 600, 607–08 (11th Cir. 2013), or the

---

§ 2B1.1(b)(11)(B)(i) enhancement was improper because he had been convicted and sentenced for aggravated identity theft under 18 U.S.C. § 1028A. We consider the matter properly raised.

production of unauthorized access devices, *Taylor*, 818 F.3d at 676–77, are permitted.

Here, the district court erred in applying § 2B1.1(b)(11)(C)(i). That enhancement is based on the "transfer or use" of a "means of identification." U.S.S.G. § 2B1.1(b)(11)(C)(i). It therefore falls within the scope of § 2B1.6, which bars application of enhancements based on the "transfer, possession or use of a means of identification." *Id.* § 2B1.6, cmt. n.2; *Cruz*, 713 F.3d at 607; *accord United States v. Gonzales*, 844 F.3d 929, 933 (10th Cir. 2016) ("A proper occasion for using application note 2 to § 2B1.6 would be when the sentencing court would otherwise apply USSG § 2B1.1(b)(11)(C) . . . ."); *United States v. Sharapka*, 526 F.3d 58, 62 (1st Cir. 2008) ("Had the court imposed the enhancement under § 2B1.1(b)([11])(C)(i), then § 2B1.6 would preclude application of a two-level enhancement."). We therefore vacate and remand for resentencing without this enhancement.

## III.

Finally, Devlin argues that the district court erred by sentencing him based on facts neither admitted in his guilty plea nor found by a jury. As he concedes, this argument is foreclosed by binding precedent. *See United States v. Charles*, 757 F.3d 1225–26 (11th Cir. 2014) ("[A] district court may continue to make guidelines calculations based upon judicial fact findings and may enhance a sentence—so long

as its findings do not increase the statutory maximum or minimum authorized by facts determined in a guilty plea or jury verdict."). The court's findings here were proper because they did not increase the statutory minimum or maximum sentence for any of Devlin's convictions.

## IV.

In sum, we affirm the district court in all respects but one: we hold that, in light of § 2B1.6 and its commentary, the court should not have applied an enhancement based on the "transfer or use" of a "means of identification" under § 2B1.1(b)(11)(C)(i). We therefore vacate and remand for resentencing without this enhancement.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 16, 2019

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  18-12825-HH
Case Style:  USA v. Tyrone Devlin
District Court Docket No:  8:17-cr-00372-VMC-TGW-1

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Christopher Bergquist, HH at 404-335-6169.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1 Ntc of Issuance of Opinion